No. 25-14263

# In the United States Court of Appeals for the Eleventh Circuit

❖

ISIS BENJAMIN, ET AL,
*Plaintiffs-Appellants,*

V.

COMMISSIONER TYRONE OLIVER,
IN HIS OFFICIAL CAPACITY, ET AL,
*Defendants-Appellees.*

❖

Appeal from the United States District Court
for the Northern District of Georgia
No. 1:25-cv-04470-VMC

❖

## BRIEF OF APPELLANT
## CENTURION OF GEORGIA, LLC

❖

Michael J. Bentley
Erin Saltaformaggio
BRADLEY ARANT BOULT
CUMMINGS LLP
188 E Capitol Street, Suite 1000
Jackson, MS 39201
(601) 948-8000
mbentley@bradley.com
esaltaformaggio@bradley.com

Michael G. Frankson
HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
(404) 892-4022
mfrankson@huffpowellbailey.com

*Attorneys for Defendant-Appellant Centurion of Georgia, LLC*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, Appellant Centurion of Georgia, LLC filed its Certificate of Interested Persons and Corporate Disclosure Statement (CIP) on January 6, 2026. The CIP remains complete and accurate as of the filing of this brief.

Dated: February 27, 2026.

*/s/ Michael J. Bentley*
*Attorney for Defendant-Appellant*
*Centurion of Georgia, LLC*

## STATEMENT REGARDING ORAL ARGUMENT

The Court has expedited briefing in this case and set oral argument for April 24, 2026.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ..................................ii

TABLE OF AUTHORITIES....................................................................ii

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUE...............................................................2

STATEMENT OF THE CASE ................................................................3

I.     Factual Background .......................................................................3

    A.     Centurion, a private healthcare company, provides
    contractually specified healthcare to GDC inmates...............3

    B.     The Georgia Legislature enacted SB 185, which is the
    law and official policy of the State.........................................4

    C.     GDC implemented SB 185 through rulemaking, and
    Centurion complied with the law............................................5

II.    Procedural History .........................................................................6

STANDARD OF REVIEW....................................................................9

SUMMARY OF THE ARGUMENT .........................................................9

ARGUMENT ......................................................................................10

I.     Under *Monell* and *Howell*, private contractors are not liable
    for state laws and policies...........................................................10

II.    SB 185 is the State's law and policy, so Centurion cannot be
    liable for the law's alleged constitutional injuries. ......................14

CONCLUSION ...................................................................................18

CERTIFICATE OF COMPLIANCE........................................................19

CERTIFICATE OF SERVICE................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADT LLC v. NorthStar Alarm Servs., LLC,*
  853 F.3d 1348 (11th Cir. 2017) ............................................................ 17

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,*
  520 U.S. 397 (1997) ....................................................... 10, 11, 12, 15

*Benjamin v. Jacobson,*
  172 F.3d 144 (2d Cir. 1999) ............................................................. 17

*Buckner v. Toro,*
  116 F.3d 450 (11th Cir. 1997) .......................................................... 12

*Craig v. Floyd County, Ga.,*
  643 F.3d 1306 (11th Cir. 2011) ........................................................ 11

*Howell v. Burden,*
  12 F.3d 190 ............................................................................... 10

*Howell v. Evans,*
  922 F.2d 712 (11th Cir. 1991) .................................................. *passim*

*Johnson v. Karnes,*
  398 F.3d 868 (6th Cir. 2005) ................................................ 12, 13, 14

*Manor Healthcare Corp v. Lomelo,*
  929 F.2d 633 (11th Cir. 1991) .......................................................... 14

*McDowell v. Brown,*
  392 F.3d 1283 (11th Cir. 2004) ....................................................... 9, 12

*McMillian v. Monroe Cnty., Ala.,*
  520 U.S. 781 (1997) .............................................................. 11, 12, 14

*Monell v. Department of Social Services,*
  436 U.S. 658 (1978) ...................................................................... 2, 12

*Schindler Elevator Corp. v. U.S. ex rel. Kirk,*
    563 U.S. 401 (2011) ...................................................................... 17

*Teel v. Lozada,*
    99 F.4th 1273 (11th Cir. 2024) ....................................................... 11

*Underwood v. City of Bessemer,*
    11 F.4th 1317 (11th Cir. 2021) ......................................................... 9

*Wade v. McDade,*
    106 F.4th 1251 (11th Cir. 2024) (en banc) ...................................... 15

*Whiting v. Wexford Health Sources, Inc.,*
    839 F.3d 658 (7th Cir. 2016) ........................................................... 14

## Statutes

18 U.S.C. § 3626(a)(1)(B) ...................................................................... 16

18 U.S.C. § 3626(g) ................................................................................ 17

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1331 ...................................................................................... 1

42 U.S.C. § 1983 .............................................................................. *passim*

42 U.S.C. § 2000cc-5(4)(A)(iii) ............................................................ 17

Ga. Code Ann. § 42-2-11 ......................................................................... 4

Ga. Code Ann. § 42-2-11(a)-(b) .............................................................. 5

Ga. Code Ann. § 42-5-2(e)(1) .................................................................. 4

## Other Authorities

11th Cir. R. 26.1-1 ...................................................................................i

Fed. R. Civ. P. 23(b)(2) ............................................................................ 7

Fed. R. Civ. P. 56(a) ................................................................................. 9

Fed. R. Civ. P. 65(d)(2)(C) ........................................................ 17

Ga. Comp. R. & Regs. R. 125-4-4-.13 ......................................... 5, 10, 15

Ga. Const., art. III ...................................................................... 4

GA SB 185 (2025) ..................................................................... 4, 5

U.S. CONST. amend VIII ............................................................. *passim*

# JURISDICTIONAL STATEMENT

The district court had federal-question jurisdiction pursuant to 28 U.S.C. § 1331, as the underlying claims are brought under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because the district court entered a partial final judgment, which the district court certified as immediately appealable, and a permanent injunction against all defendants. R.94 (order and opinion); R.95 (judgment).[1] The basis for appellate jurisdiction is further explained in the appellants' response to this Court's jurisdictional question. Doc. 41.

The district court entered judgment on December 3, 2025, R.95, and Centurion timely appealed on December 22, 2025, R.105.

---

[1] Citations to the district court docket are formatted as R.___, with R. referencing the document number in the district court. Citations to filings in this Court are cited as Doc.___. Page numbers are provided if relevant.

1

## STATEMENT OF THE ISSUE

Centurion of Georgia, LLC's appeal raises a single issue, separate from the merits of the constitutional challenge to SB 185.

Centurion is a private healthcare company that provides contract medical services to inmates in custody of the Georgia Department of Corrections ("GDC"). Centurion does not make policy for the State of Georgia or GDC. Even so, the district court held Centurion liable for SB 185 under an "implementation" theory: "[B]y implementing S.B. 185, Centurion has adopted a policy which the Court finds violates the Eighth Amendment." R.94 at 23 n.11.

The question presented is:

Does Section 1983, as interpreted by *Monell v. Department of Social Services,* 436 U.S. 658 (1978), make a private contractor constitutionally liable for complying with a state law that is implemented by a state agency with final policymaking authority on the issue?

## STATEMENT OF THE CASE

In *Howell v. Evans*, 922 F.2d 712 (11th Cir. 1991), this Court—applying *Monell* to an Eighth Amendment deliberate indifference claim—held that, when a private medical contractor follows state policy, the contractor is not liable for constitutional harms allegedly caused by the state's policy. Other circuits have since adopted that sensible rule. This case presents an opportunity to reaffirm it.

The Georgia Legislature enacted SB 185, a state law prohibiting the use of state funds for certain treatments for inmates with gender dysphoria. GDC issued a rule implementing SB 185. Centurion, a private medical contractor for GDC, complied with SB 185 until the district court enjoined it. Whatever might be said about SB 185's constitutionality, no one can say it is a Centurion policy.

## I.    Factual Background

### A.    Centurion, a private healthcare company, provides contractually specified healthcare to GDC inmates.

Centurion of Georgia, LLC is a private healthcare company that provides contractually-specified healthcare to inmates in GDC's custody. R.1, ¶ 29 (Compl.); R.64, ¶ 29 (Centurion Answer). Centurion does not make laws or policy for GDC. The Georgia Legislature enacts state laws,

Ga. Const., art. III, and the Georgia Board of Corrections establishes policies for GDC, Ga. Code Ann. § 42-2-11.

### B.    The Georgia Legislature enacted SB 185, which is the law and official policy of the State.

In May 2025, the Georgia Legislature enacted, and the Governor of Georgia signed, Senate Bill 185 ("SB 185"), which became effective immediately. R.81, ¶ 87; R.71-1, ¶ 19. The law prohibits the use of "state funds or resources" for certain treatments for state inmates, including the use of hormone therapies to treat patients with gender dysphoria. Ga. Code Ann. § 42-5-2(e)(1); *see also* R.71-1, ¶ 20.

SB 185 is the State of Georgia's official policy. As the State Defendants  explained, SB 185 is the Legislature's "policy choice," R.25 at 1-2, 5, on a "hotly contested question of public policy," R.72 at 1-2; *see also* Doc. 25 at 1-8 (State Defs.' Opening Br.). As noted at the preliminary injunction hearing, SB 185's categorical prohibition of hormone therapy was not a decision made by treating physicians. R.56 at 34. (Hearing Tr.) It was made by the "peoples representatives' at a higher level":

> It was based on the legislature's determination that this category of intervention is not something the State supports. So that was a decision, just as in *Skrmetti* and *Eknes* and *Gibson* out of the Fifth Circuit, it was made by the peoples'

4

representatives at a higher level that they categorically don't think this is a category that we should be doing in the prisons.

R.56 at 34 (Hearing Tr.).

### C.  GDC implemented SB 185 through rulemaking, and Centurion complied with the law.

In June 2025, the Georgia Board of Corrections—the policymaking board for GDC—issued a rule implementing the new law. R.71-1, ¶ 21 (Pls.' Statement of Facts) (citing Georgia Bd. of Corrs. Rule 125-4-4-.13).[2] Plaintiffs assert that SB 185 and the implementing constitute the policy that they challenge: "Together, SB185 and Rule 125-4-4-.13 . . . prohibit hormone therapy as gender dysphoria treatment within GDC . . . ." R.71-1, ¶ 22; *see also* R.80-1, ¶ 22 (State Defs.' Response).

In July 2025, "as requested by GDC to comply with Senate Bill 185, Centurion began tapering all patients off [hormone replacement therapy.]" R.25-1, ¶ 4 (Decl. of Dr. Gerald E. Wynne).

Of course, even as it complied with SB 185, Centurion provided the class members with continuous medical care subject to the limitations

---

[2] The Board of Corrections is authorized by statute to "establish the general policy to be followed by the [GDC]" by promulgating rules and regulations governing GDC's affairs. Ga. Code Ann. § 42-2-11(a)-(b). The Board's members and meeting minutes, along with a description of its role and functions, is published by GDC. *See* Ga. Dep't of Corrs., About GDC, Board of Corrections, avail. https://gdc.georgia.gov/organization/about-gdc/board-corrections (vis. Feb. 27, 2026).

imposed by the state law. *See* R.25-1, ¶¶ 4-6 (Wynne Decl. – Redacted). To minimize any side effects of SB 185, Centurion provided a tapering process tailored to each patient's circumstances, rather than abruptly terminating hormone therapy. *Id.* at ¶¶ 5-6; *see also* R. 28-1, ¶¶ 7-11 (Wynne Decl. – Unredacted). All patients undergoing tapering received regular medical and mental health monitoring. R.25-1, ¶ 6; (Wynne Decl.); 25-2, ¶¶ 7-9 (Decl. of Kathryn Haynes Owen Ph.D., GDC Statewide Mental Health Director).

## II.    Procedural History

Plaintiffs sued in August 2025, alleging that SB 185 violated the Eighth Amendment's "cruel and unusual punishments" clause because it banned a specific medical treatment for transgender inmates. R.1 (Complaint). In addition to the State Defendants (GDC's commissioner, deputy commissioner, and statewide medical director), Plaintiffs sued Centurion in its capacity as a contractor for GDC. R.1, ¶ 29 ("Because Centurion has contracted with the State of Georgia to provide functions traditionally reserved for the State, this action is brought against Centurion as a government entity under 42 U.S.C. § 1983.").

Plaintiffs sought provisional class certification and a preliminary injunction prohibiting enforcement of SB 185. R.2 (Mot. for Provisional Class Cert.); R.3 (Emergency Mot. for Prelim. Inj.). The State Defendants opposed the motions, arguing that SB 185 was the Georgia Legislature's "policy choice" and "a clear, uniform rule on a hotly contested question of public policy." R.25 at 1 (State Defs.' Opp. to Prelim. Inj.); *see also* R.26 (State Defs.' Opp. to Calss Cert.).

Centurion responded to the motions only to make two points. R.24. First, as GDC's contract medical provider, it was bound to follow state law and GDC policy when providing care to inmates in GDC custody. R.24 at 3. Second, however the district court might decide the constitutional challenge to SB 185, Centurion's compliance with state law could not be a basis for *Monell* liability. R.24 at 3 (citing *Howell*, 922 F.2d at 724-26).

The district court granted Plaintiffs' motions, provisionally certified two Rule 23(b)(2) injunctive-relief classes, and entered a 90-day class-wide preliminary injunction against SB 185. R.50 at 61-63 (order). The district court ordered expedited briefing on summary judgment and class certification, after which Plaintiffs and State Defendants filed cross-motions for summary judgment. R.71 (Pls.' Summ. J. Mot.); R.72 (Defs.'

Summ. J. Mot.). Centurion sought summary judgment under this Court's decision in *Howell*, arguing that it could not be declared "deliberately indifferent" based on its compliance with state law and state policy. R.75 at 2 (citing *Howell*, 922 F.2d at 724-26 and other authorities).

The district court granted Plaintiffs' motions, re-certifying the two injunctive-relief classes and permanently enjoining SB 185. R.94 (order); R.95 (partial final judgment). The district court rejected Centurion's arguments under *Monell* and *Howell*, holding that "by implementing S.B. 185, Centurion has adopted a policy which the Court finds violates the Eighth Amendment." R.94 at 23 n.11.

The State Defendants appealed the final order and judgment, R.96, and Centurion separately appealed the district court's imposition of *Monell* liability under an "implementing" theory, R.105.

8

## STANDARD OF REVIEW

The denial of Centurion's summary judgment motion is reviewed de novo. *Underwood v. City of Bessemer*, 11 F.4th 1317, 1327 (11th Cir. 2021). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

## SUMMARY OF THE ARGUMENT

Section 1983 imposes policy-or-practice liability for constitutional violations only on final policymakers—persons or entities that are the "moving force" behind the claimed injury. *McDowell v. Brown*, 392 F.3d 1283, 1292 (11th Cir. 2004). Section 1983 requires an individual liability assessment. It does not make one person responsible for acts of another.

In *Howell v. Evans*, this Court applied that rule to the circumstances presented in this case—claims that a private healthcare contractor for GDC had a policy that violated the Eighth Amendment. The Court made a careful analysis, as required by *Monell*, to determine who was the "final authority" on the specific policy at issue. This Court found that the private contractor was not the final policymaker, and held that a private contractor could not be liable for the state's policy. 922 F.2d

9

at 724-26. Other circuits follow that rule, which is faithful to Section 1983's "rigorous standards of culpability and causation." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997).

When that principle is applied here, reversal is required. Section 1983 does not make Centurion liable for the Georgia Legislature's policy choices (contained in SB 185) or GDC's implementing rule (Rule 125-4-4-.13). Those are the State's policies, not Centurion's. Like any contractor for a state corrections agency, Centurion must comply with state law. But complying with state law does not make one liable for the law.

The district court could afford complete relief in this case by enjoining the state officials who were the final policymakers on the issue, which it did. It erred by extending constitutional liability to Centurion.

## ARGUMENT

I.   **Under *Monell* and *Howell*, private contractors are not liable for state laws and policies.**

This Court has recognized that, under Section 1983, a private contractor cannot be liable for complying with state law or policy. *Howell*, 922 F.2d at 724-26.[3] That rule comes directly from *Monell*.

---

[3] The *Howell* opinion was temporarily withdrawn due to confusion over whether the case had been settled, but the Court later reinstated it. *Howell v. Burden*, 12 F.3d 190, 191 at n.* (11th Cir. 1994) (recounting procedural history and reinstatement).

To prevail on a *Monell* claim, a plaintiff must prove: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Teel v. Lozada*, 99 F.4th 1273, 1279 (11th Cir. 2024). Section 1983 does not impose vicarious liability; a defendant is only liable for his, her, or its own conduct. *See Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011); *accord Brown*, 520 U.S. at 405 ("[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.").

Requiring plaintiffs (and courts) to identify the policy and the final policymaker is key to "ensur[ing] that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Craig*, 643 F.3d at 1310. Moreover, when deciding if there is a municipal policy, courts must "ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997). And the "moving force" causation burden

reinforces the preciseness of this inquiry: "A plaintiff must prove causation by demonstrating that the municipality's deliberate conduct . . was the 'moving force' behind [his] injury . . . ." *McDowell*, 392 F.3d at 1292 (quoting *Brown*, 520 U.S. at 404).

Private contractors for government entities can also be subject to *Monell* policy-or-practice liability under Section 1983. *See Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1997) (citing *Monell*, 436 U.S. at 692). When a *Monell* claim is leveled against a private contractor, courts must identify the final policymaker and distinguish state policies from contractor policies. *Howell*, 922 F.2d at 724-26; *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). Doing so is essential to faithfully applying Section 1983's "rigorous standards of culpability and causation," *Brown*, 520 U.S. at 405, and ensuring that the defendant has final policymaking authority on the "particular issue" alleged to have caused the constitutional harm, *McMillian*, 520 U.S. at 785.

In *Howell*, this Court applied those principles to reject a *Monell* claim against a private medical contractor for a state corrections agency. 922 F.2d at 724-26. In *Howell*, the representative of an inmate who died of asthma attack sued both GDC and CMS, a private healthcare

contractor for GDC, alleging deliberate indifference to the inmate's serious medical needs. *Id.* at 715-16, 723-26. The plaintiff claimed CMS had a custom and practice of failing to maintain proper equipment and staff to treat asthmatic patients. *Id.* at 724-26.

Because "[t]he state divided responsibilities for policy among various officials, including the Commissioner of Corrections, the superintendent, and CMS," this Court had to determine which official had final authority over the challenged policy. *Id.* at 725. This Court rejected the claim against CMS, recognizing that CMS's providers were responsible for providing care to inmates, but CMS's policymaker at the facility "was not the final authority on the matters of equipment and staff procurement . . . ." *Id.* at 725. As a matter of law, CMS could not be liable for GDC's policies. *Id.*

Under *Howell*, the court must decide if a challenged policy is that of the contractor or one imposed by the state. Other circuits applying *Monell* to private contractors make this same inquiry. In *Johnson v. Karnes*, the Sixth Circuit explained that the "appropriate inquiry for a government contractor defendant is similar" to the *Monell* inquiry for a municipality. 398 F.3d at 877. "The difference, however, is that a private

13

contractor is liable for a policy or custom *of that private contractor*, rather than a policy or custom of the municipality." *Id.* (emphasis in original); *see also Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) ("To prevail on his *Monell* claim, Whiting needs to show that Wexford's policy, practice, or custom, caused a constitutional violation.").

Under Section 1983 and *Howell*, the district court was required to determine if SB 185 was a state policy or a Centurion policy.

## II.   SB 185 is the State's law and policy, so Centurion cannot be liable for the law's alleged constitutional injuries.

There is no confusion as to who the final policymaker was for SB 185, a state law adopted by the Georgia Legislature and signed by the Governor of Georgia. It is the State's policy, not Centurion's. Further, there is no suggestion that Centurion has any authority to make policy on this "particular issue," *McMillian*, 520 U.S. at 785, which the Legislature has deemed a matter of important public policy that it will decide by legislation. *See Manor Healthcare Corp v. Lomelo*, 929 F.2d 633, 638 (11th Cir. 1991) ("[N]o matter how much power an official has, no municipal liability exists if that official does not set the policy at issue.").

Plaintiffs and the State Defendants agree that the challenged policy is a State policy, not a Centurion policy. Plaintiffs' assert that "SB185

and Rule 125-4-4-.13 . . . prohibit hormone therapy as gender dysphoria treatment within GDC." R.71-1, ¶ 22. The State Defendants agree that the "policy choice" embodied in SB 185 was not a policy adopted by doctors treating inmates with gender dysphoria. That policy choice "was made by the peoples' representatives at a higher level that they categorically don't think this is a category that we should be doing in the prisons." R.56 at 34. (Hearing Tr.). Centurion did not make the policy, and under *Monell* and *Howell* Centurion cannot be liable for alleged constitutional harms flowing from the State's policy.

The district court's suggestion that Section 1983 imposes liability on Centurion for "implementing" SB 185 is wrong. *See* R.94 at 23 n.11. As an initial matter, the Georgia Board of Corrections implemented SB 185 for GDC by adopting Rule 125-4-4-.13. Centurion and its medical providers complied with the law adopted by the Legislature and implemented by the Board of Corrections and GDC.[4] Further, *Monell*'s "rigorous standards of culpability and causation," *Brown*, 520 U.S. at 405,

---

[4] To be clear, Centurion's medical providers are not acting with "deliberate indifference" toward any patient. *Wade v. McDade*, 106 F.4th 1251, 1255-62 (11th Cir. 2024) (en banc) (discussing deliberate indifference standard). As discussed above, Centurion has provided the class members with continuous medical and mental health care subject to SB 185's limitations. *See supra*, pp.5-6.

forbid transferring liability from the final lawmaker to a person who is simply obeying the law. Transferring liability in this manner, from an active lawmaker to a passive law-abider, amounts to "vicarious" liability—that is, requiring that liability be "suffered by one person as a substitute for another." Vicarious, Black's Law Dictionary (12th ed. 2024). Section 1983 and *Monell* forbid that.

Finally, to the extent the district court suggested that the Prison Litigation Reform Act ("PLRA") empowers it to enjoin Centurion, that is also mistaken. *See* R.94 at 23 (citing 18 U.S.C. § 3626(a)(1)(B)). The cited section of the PLRA permits a court to order prospective relief against a "government official" only if a three-part test is satisfied:

> The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless--(i) Federal law requires such relief to be ordered in violation of State or local law; (ii) the relief is necessary to correct the violation of a Federal right; and (iii) no other relief will correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(B). The district court did not cite any authority for extending the PLRA beyond its plain terms, which limits injunctive relief

16

to "government officials."[5] And the district court did not explain why "no other relief"—such as enjoining the government officials who are named defendants—could correct the constitutional violation.

In any event, the PLRA is a purely procedural statute; it does not grant new substantive rights or expand existing rights under federal law. *See Benjamin v. Jacobson*, 172 F.3d 144, 163 (2d Cir. 1999) (explaining that PLRA "has neither defined nor altered the federal rights that may be vindicated in prisoner litigation"). If Centurion is not subject to liability under Section 1983, then it cannot be subject to injunctive relief under the PLRA.[6] The district court's decision (as to Centurion) is not sustainable under Section 1983 or the PLRA.

---

[5] Although the PLRA includes a definitions section, "government official" is not a defined term. 18 U.S.C. § 3626(g). So, it should be given its ordinary meaning, which connotes a person holding a government office, not a private actor. *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 407 (2011) (undefined statutory terms are given their "ordinary meaning"). Indeed, Congress knows how to extend the term "government" to both government officials and "any other person acting under color of State law," as it has done in the Religious Land Use and by Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-5(4)(A)(iii). It did not do so in the PLRA.

[6] Centurion acknowledges that Federal Rule of Civil Procedure 65(d)(2)(C) permits a district court, in certain circumstances, to extend an injunction to "other persons who are in active concert or participation" with the enjoined parties. *See ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017) (discussing rule's reach and limitations). Of course, the PLRA limits that rule in the context of prisoner litigation. In any event, the district court did not invoke Rule 65(d)(2)(C). It declared Centurion liable for the State's law under Section 1983.

17

## CONCLUSION

This Court should reverse the district court's summary judgment ruling that Centurion is liable under Section 1983 for "implementing" SB 185, reaffirm the holding of *Howell v. Evans*, 922 F.2d 712 (11th Cir. 1991), and render judgment for Centurion.

Dated: February 27, 2026

Respectfully submitted,

*/s/ Michael J. Bentley*
Michael J. Bentley
Erin Saltaformaggio
mbentley@bradley.com
esaltaformaggio@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
188 E Capitol Street, Suite 1000
Jackson, MS 39201
(601) 948-8000


Michael G. Frankson
HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
(404) 892-4022
mfrankson@huffpowellbailey.com

*Counsel for Appellant*
*Centurion of Georgia, LLC*

18

## CERTIFICATE OF COMPLIANCE

1.     This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,538 words.

2.     This motion complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), which incorporates the typeface and type-style requirements of Fed. R. App. P. 32(a)(5), (6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook font, size 14.

*/s/Michael J. Bentley*
*Counsel for Appellant*
*Centurion of Georgia, LLC*

19

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served electronically by the

Court CM/ECF system on February 27, 2026 on all counsel of record.

*/s/ Michael J. Bentley*
*Counsel for Appellant*
*Centurion of Georgia, LLC*