**No. 25-14263**

# In the United States Court of Appeals for the Eleventh Circuit

♦

**ISIS BENJAMIN, ET AL,**
*Plaintiffs-Appellants,*

V.

**COMMISSIONER TYRONE OLIVER,**
**IN HIS OFFICIAL CAPACITY, ET AL,**
*Defendants-Appellees.*

♦

Appeal from the United States District Court
for the Northern District of Georgia
No. 1:25-cv-04470-VMC

♦

**REPLY BRIEF OF APPELLANT
CENTURION OF GEORGIA, LLC**

♦

Michael J. Bentley
Erin Saltaformaggio
BRADLEY ARANT BOULT
CUMMINGS LLP
188 E Capitol Street, Suite 1000
Jackson, MS 39201
(601) 948-8000
mbentley@bradley.com
esaltaformaggio@bradley.com

Michael G. Frankson
HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
(404) 892-4022
mfrankson@huffpowellbailey.com

*Attorneys for Defendant-Appellant Centurion of Georgia, LLC*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................ii

REPLY ARGUMENT ............................................................................ 1

I.    Centurion is not the final policymaker on issues governed by SB 185, and *Monell* does not make it liable for the law ....................... 2

    A.    Plaintiffs' "implementing" theory of *Monell* liability is not supported by *Wyatt v. Cole*, 504 U.S. 158 (1992). ................. 2

    B.    Plaintiffs' "direct involvement" theory of liability misreads *Howell* and defies *Monell*. ................................................... 3

    C.    The evidence confirms that Centurion is not the final policymaker for issues governed by SB 185. ........................ 6

II.   The Prison Litigation Reform Act does not authorize the district court to enjoin Centurion in this case ............................................ 10

CONCLUSION ................................................................................. 11

CERTIFICATE OF COMPLIANCE ...................................................... 13

CERTIFICATE OF SERVICE .............................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,*
520 U.S. 397 (1997).................................................................5, 8

*Cooper v. Dillon,*
403 F.3d 1208 (11th Cir. 2005)......................................................8, 9

*Craig v. Floyd Cnty., Ga.,*
643 F.3d 1306 (11th Cir. 2011).........................................................5

*Howell v. Evans,*
922 F.2d 712 (11th Cir. 1991)................................................... *passim*

*Johnson v. Karnes,*
398 F.3d 868 (6th Cir. 2005)...........................................................10

*Kelly v. Ambroski,*
97 F. Supp. 3d 1320 (N.D. Ala. 2015)..................................................4

*Keohane v. Dixon,*
No. 4:24-cv-00434 (N.D. Fla.) ..........................................................8

*McMillian v. Monroe Cnty., Ala.,*
520 U.S. 781 (1997)......................................................................6

*Monell v. Department of Social Services,*
436 U.S. 658 (1978)......................................................................1

*Nat'l Pork Producers Council v. Ross,*
598 U.S. 356 (2023)......................................................................5

*Ort v. Pinchback,*
786 F.2d 1105 (11th Cir. 1986)......................................................3, 4

*Reeves v. Astrue,*
526 F.3d 732 (11th Cir. 2008).........................................................11

*Robinson v. Labrador*,
  747 F. Supp. 3d 1331 (D. Idaho 2024) ............................................ 8, 11

*Robinson v. Labrador*,
  No. 1:24-cv-00306 (D. Idaho) ............................................................. 8

*Smith v. LePage*,
  834 F.3d 1285 (11th Cir. 2016) .......................................................... 4

*Surplus Store & Exch., Inc. v. City of Delphi*,
  928 F.2d 788 (7th Cir. 1991) .............................................................. 9

*Teel v. Lozada*,
  99 F.4th 1273 (11th Cir. 2024) .......................................................... 5

*Whiting v. Wexford Health Sources, Inc.*,
  839 F.3d 658 (7th Cir. 2016) ............................................................ 10

*Wyatt v. Cole*,
  504 U.S. 158 (1992) ............................................................................ 2

## Statutes

18 U.S.C. § 3626(a)(1)(B) ..................................................................... 10, 11

42 U.S.C. § 1983 ............................................................................. *passim*

Idaho Code § 18-8901 ............................................................................. 7

## Other Authorities

U.S. Const. amend. VIII .................................................................... 2, 6, 9

## REPLY ARGUMENT

Under Section 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the final policymaker is liable for constitutional harms caused by its policies. When a private contractor operates within a state prison system, courts must determine if the challenged policy was made by the contractor or the state. As this Court has recognized, one party cannot be made constitutionally liable for the policies of another. *Howell v. Evans*, 922 F.2d 712, 724-26 (11th Cir. 1991); *see also* Doc. 52 (Centurion Br. 10-16) (discussing *Howell*, *Monell*, and other authorities).

Plaintiffs urge this Court to depart from *Howell* and hold Centurion liable for state law by adopting the district court's "implementing" theory or creating a "direct involvement" theory of Section 1983 liability. Plaintiffs offer no support for these theories, both of which—contrary to the rule in *Monell* and *Howell*—would transfer liability to someone other than the final policymaker. Nor do Plaintiffs offer any sensible reason for adopting such a rule in these circumstances, where the final policymaker is plain to everyone and is also a defendant in the case.

The Court should apply *Howell*, reverse the district court's ruling, and render judgment for Centurion.

1

I.    **Centurion is not the final policymaker on issues governed by SB 185, and *Monell* does not make it liable for the law.**

   A.    **Plaintiffs' "implementing" theory of *Monell* liability is not supported by *Wyatt v. Cole*, 504 U.S. 158 (1992).**

Plaintiffs, citing *Wyatt v. Cole,* 504 U.S. 158 (1992), argue that Centurion can be liable for "implementing" SB 185, a state law. Doc. 55 (Pls.' Br. at 60-61). In *Wyatt*, the Supreme Court held that private parties who invoked an unconstitutional state replevin statute to seize property could not assert a qualified immunity defense to Section 1983 claims by the property owner. *Id.* at 167-69. The Supreme Court stressed that the question presented in *Wyatt* was "a very narrow one," limited to the qualified immunity defense. *Id.* at 168. *Wyatt* did not announce rules governing *Monell* liability for private contractors for state corrections agencies. Those rules are discussed in *Monell, Howell* and Centurion's brief. *See* Doc. 52 (Centurion Br. 10-14).

*Wyatt* is off point. Centurion does not assert a qualified immunity defense.[1] Centurion challenges the district court's ruling that it violated the Eighth Amendment by complying with a state law. Moreover, unlike

---

[1] As a corporate entity defending a *Monell* claim, Centurion may not assert a qualified immunity defense. *See Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1291 (11th Cir. 2025). The qualified immunity defense is reserved for individual defendants. *Id.*

the defendants in *Wyatt*, Centurion did not voluntarily invoke a state replevin law or any other law. Centurion obeyed a state law that mandated certain conduct by Centurion and its medical providers.

*Wyatt* does not support the district court's "implementing" theory of liability. As discussed, *Monell* and *Howell* control the analysis and they do not impose constitutional liability on private contractors that are not final policymakers for the particular issue challenged by a plaintiff. *See* Doc. 52 (Centurion Br. at 12-14) (discussing authorities).

**B.    Plaintiffs' "direct involvement" theory of liability misreads *Howell* and defies *Monell*.**

Plaintiffs next argue that, under *Howell*, Centurion is subject to constitutional liability for SB 185 under a "direct involvement" theory. Doc. 55 (Plaintiffs' Br. at 61). In *Howell*, this Court stated that a *Monell* plaintiff "can allege causation by showing either that [the private contractor] was directly involved in the violation, or that a policy or custom of [the private contractor] led to the violation." 922 F.2d at 724 (citing *Ort v. Pinchback*, 786 F.2d 1105, 1107 (11th Cir. 1986)).

*Howell* did not elaborate on what "direct involvement" might entail in the *Monell* context, other than to acknowledge that CMS (the private medical contractor) was not directly involved in the care of the deceased

3

inmate. *Id.* Of course, as *Howell* recognized, "direct involvement" cannot mean *respondeat superior* liability. *Id.* The fact that CMS's physicians and nurses provided medical services to inmates in GDC custody did not mean that CMS was "directly involved" in the alleged violation. And *Ort*, on which *Howell* relied, does not shed any light on the phrase's meaning either. In *Ort*, this Court held that the private contractor (CMS) was not a proper defendant because the plaintiff "in no way implicated CMS in the constitutional violation he alleges" and "never intended to sue CMS but included it as a defendant in lieu of naming individual physicians who were responsible for his injury." 786 F. 2d at 1107.[2] There was no discussion of "direct involvement" by CMS.

Whatever *Howell*'s "directly involved" language might have meant, and it is likely dicta, the Court's analysis focused on the "final authority" on a particular issue and its decision confirmed that a private contractor is not constitutionally liable for a state policy. 922 F.2d at 724-26. The

---

[2] Perhaps the naming of CMS "in lieu" of individual defendants created confusion. Direct involvement—or "personal participation"—is a liability concept that applies in Section 1983 claims against individual defendants. *E.g.*, *Smith v. LePage*, 834 F.3d 1285, 1298 (11th Cir. 2016) (affirming summary judgment because there was no proof that officer-defendant "personally participated" in fatal shooting); *Kelly v. Ambroski*, 97 F. Supp. 3d 1320, 1343 (N.D. Ala. 2015) (granting summary judgment to individual defendants because there was no evidence that they "personally participated in or had any direct involvement with the plaintiff's medical treatment").

phrase must be understood in that context. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373-74 (2023) (explaining that "opinions dispose of discrete cases and controversies and they must be read with a careful eye to context," not "parsed" like a statute). Indeed, the only way *a corporate entity* can be "directly involved" in a constitutional violation, but not impermissibly subject to vicarious liability, is by adopting an unconstitutional policy or custom.

That understanding squares the stray phrase with precedent from the Supreme Court and this Court, which requires proof of a policy or custom to impose *Monell* liability. "[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). This Court, too, limits *Monell* liability to cases in which "the municipality had a custom or policy that constituted deliberate indifference to [plaintiff's] constitutional right . . . ." *Teel v. Lozada*, 99 F.4th 1273, 1279 (11th Cir. 2024); *see also Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (requiring proof of "a 'policy or custom' of deliberate indifference").

Notably, the district court did not rely on a "direct involvement" theory. Instead, it held Centurion liable for adopting an unconstitutional policy: "[B]y implementing S.B. 185, *Centurion has adopted a policy* which the Court finds violates the Eighth Amendment." R.94 at 23 n.11 (emphasis added). But Centurion did not adopt the policy about which Plaintiffs complain. SB 185 is a state law enacted by the Georgia Legislature and implemented by GDC. Those entities—the Legislature and GDC—are the final policymakers on the "particular issue" presented in this case. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997); *Howell*, 922 F.2d at 724-26. Centurion's compliance with state law does not make it liable for the state law.

**C.    The evidence confirms that Centurion is not the final policymaker for issues governed by SB 185.**

Plaintiffs next suggest that "evidence confirms" that Centurion had "policymaking authority" for SB 185. Doc. 55 (Pls.' Br. at 61-63). But there is no genuine dispute that SB 185 is a state law and GDC's policy. The State Defendants have confirmed that in their filings and arguments in this proceeding. *See* Doc. 52 (Centurion Br. at 4-5).

Plaintiffs' evidence also confirms that Centurion was complying with state law, not making it. On May 29, 2025, shortly after SB 185's

6

enactment, GDC's general counsel informed Centurion that SB 185 "repealed" GDC's standard operating procedures (SOP) on transgender care and that Centurion's contract with GDC "should be interpreted to be consistent with the statutory language." R.11-19. GDC's general counsel advised Centurion that GDC "will be promulgating new SOPs after the Board of Corrections enacts the regulatory language contemplated in Senate Bill 185." R.11-19. This GDC directive left no room for Centurion to make policy on the issues governed by SB 185, and it leaves no doubt that GDC is the final policymaker on those issues.

To be sure, Centurion and its medical providers developed a plan for complying with SB 185 that involved tapering patients off hormone therapy rather than abruptly ending the treatment, monitoring affected patients' medical and mental health conditions, and attending to patient needs as the tapering process progressed. *See* R.11-20; Doc. 52 (Centurion Br. at 5-6). The same task fell to Centurion companies in Florida and Idaho, after those states adopted new laws or policies governing treatment for transgender patients. *See* Idaho Code § 18-8901 (effective

7

July 1, 2024); Fla. Dep't of Corrs. Health Services Bulletin 15.05.23 (effective Sept. 30, 2024).[3]

That Centurion, in its role as a contract medical provider, was responsible for developing a process for patient-specific application of a newly enacted state law is not a basis for imposing Section 1983 liability. Holding a medical contractor liable for a state's law because it must treat patients who are subject to the law ignores *Monell*'s "final decisionmaker" requirement and undermines its "rigorous standards of causation and culpability." *Brown*, 520 U.S. at 405. Such medical acts of compliance are separate and fundamentally different from acts of adoption that subject a party to constitutional liability under *Monell* and *Howell*.

Finally, Plaintiffs' citation to *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005) does not advance their argument. In *Cooper*, the plaintiff sued the police chief of Key West, Florida in his official capacity for enforcing

---

[3] As Plaintiffs note, both Idaho's law and Florida's policy have been challenged in federal court. *See Robinson v. Labrador*, No. 1:24-cv-00306 (D. Idaho); *Keohane v. Dixon*, No. 4:24-cv-00434 (N.D. Fla.). Neither court has found Centurion liable for the state's policies. In Idaho, the Court issued a preliminary injunction against the law without opposition from Centurion. *Robinson v. Labrador*, 747 F. Supp. 3d 1331, 1337 & n.1 (D. Idaho 2024). In Florida, the plaintiffs did not name Centurion as a defendant, and Centurion continues to provide hormone therapy to individual patients consistent with state policy and court rulings. *See* Order of Oct. 22, 2025 (ECF No. 125) in *Keohane v. Dixon*, No. 4:24-cv-00434 (N.D. Fla.) (explaining that FDC policy is not a "blanket ban" on hormone therapy treatment).

an unconstitutional state law. The "official capacity" suit against the police chief was "the same as a suit against the municipality of the City of Key West." *Id.* at 1221 n.8. This Court, applying *Monell*, determined that the police chief had "final policymaking authority for law enforcement matters in Key West," so his decision to enforce an unconstitutional state law rendered the city liable under Section 1983. *Id.* at 1221-23. *Cooper* is a straightforward application of *Monell*, in which the Court identified the final policymaker and held it liable for constitutional harms caused by its policy.

Notably, this Court distinguished *Cooper*'s facts from cases in which "a municipal police officer who was not in a policymaking position" enforces state law. *Id.* at 1222-23 (distinguishing *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791 (7th Cir. 1991)). In *Surplus Store*, the Seventh Circuit recognized that a city's act of following or enforcing state law is not akin to a final decisionmaker promulgating a municipal policy that directly causes a constitutional injury, as contemplated in *Monell. Id.* at 791-93. *Howell* applies that *Monell* principle in the Eighth Amendment context and the correctional setting. Following state law or a corrections agency's policy, which contractors must do, is not akin to

9

*adopting* the law or policy. *Howell*, 922 F.2d at 724-26; *see also Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016).

Centurion did not enact or adopt SB 185; it complied with the state law until the district court enjoined the law. As confirmed by *Howell*, that is not a basis for *Monell* liability.

## II.  The Prison Litigation Reform Act does not authorize the district court to enjoin Centurion in this case.

Centurion and Plaintiffs agree that the district court's power to enjoin violations of Section 1983 is not derived from the Prison Litigation Reform Act ("PLRA"). *Compare* Doc. 52 (Centurion Br. at 17) *with* Doc. 55 (Pls.' Br. at 64). The PLRA is a procedural statute; it does not confer or expand substantive rights. Centurion is not the final decisionmaker on issues governed by SB 185, so Centurion cannot be deemed liable for the law under Section 1983 or enjoined under the PLRA.

This Court's analysis need go no further than that. The parties' agreement on the source of the district court's equitable power removes the confusion created by the court's citation to the PLRA when extending its injunction to Centurion. *See* R.94 at 23 & n.11; Doc. 52 (Centurion Br.

at 16-17) (discussing district court's reference to PLRA). There is no longer a need to interpret the PLRA in Centurion's appeal.

While the point may now be academic, contrary to Plaintiffs' contention, Centurion *did* provide authority—the statutory text—for its position the PLRA limits injunctive relief to "government officials." 18 U.S.C. § 3626(a)(1)(B); *see also* Doc. 52 (Centurion Br. at 16-17). "Statutory interpretation begins and ends with the text of the statute so long as the text's meaning is clear." *Reeves v. Astrue*, 526 F.3d 732, 734 (11th Cir. 2008). The PLRA's plain text applies to "government officials," not to private parties providing contract services for those government officials. The Idaho district court order, Plaintiffs' only authority, did not discuss or apply the PLRA. *See generally, Labrador*, 747 F. Supp. 3d 1331. Centurion's argument is sound, but this issue can be addressed another day.

## CONCLUSION

This Court should reverse the district court's summary judgment order as to Centurion, reaffirm the holding in *Howell*, and render judgment for Centurion.

11

Dated: April 3, 2026

Respectfully submitted,

/s/ Michael J. Bentley
Michael J. Bentley
Erin Saltaformaggio
mbentley@bradley.com
esaltaformaggio@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
188 E Capitol Street, Suite 1000
Jackson, MS 39201
(601) 948-8000

Michael G. Frankson
HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
(404) 892-4022
mfrankson@huffpowellbailey.com

*Counsel for Appellant*
*Centurion of Georgia, LLC*

12

## CERTIFICATE OF COMPLIANCE

1.　　This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,381 words.

2.　　This motion complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), which incorporates the typeface and type-style requirements of Fed. R. App. P. 32(a)(5), (6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook font, size 14.

*/s/Michael J. Bentley*
*Counsel for Appellant*
*Centurion of Georgia, LLC*

13

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served electronically by the

Court CM/ECF system on April 3, 2026 on all counsel of record.

*/s/ Michael J. Bentley*
*Counsel for Appellant*
*Centurion of Georgia, LLC*

14