# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ISIS BENJAMIN, et al.,
*Plaintiffs-Appellees*,

v.

COMMISSIONER TYRONE OLIVER, in his official capacity, et al.,
*Defendants-Appellants.*

Appeal from the U.S. District Court for the
Northern District of Georgia, No. 1:25-cv-04470 (Calvert, J.)

# REPLY BRIEF OF APPELLANTS

Christopher M. Carr
 *Attorney General*
John Henry Thompson
 *Solicitor General*
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia, 30334
404-458-3408
jhthompson@law.ga.gov

Jeffrey M. Harris
Rachael C.T. Wyrick
Julius Kairey
Zachary P. Grouev*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com

*Supervised by principals of the firm admitted
to practice in Virginia*

*Counsel for Appellants*

## AMENDED CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 and 26.1-2, the undersigned counsel certifies that the following listed persons and parties may have an interest in the outcome of this case:

1. **Arizona Legislature – *amicus curiae***

2. **Armstrong, Andrea – *amicus curiae***

3. **Baker, Dr. Kellan – *amicus curiae***

4. **Barta, James A. – counsel for *amici* States**

5. **Ball, W. David – *amicus curiae***

6. **Barefoot, Luke A. – Counsel for *amicus* Baker**

7. Benjamin, Isis (Yohansan Jovan Stewart)[1] – Appellee

8. Bentley, Michael J. – Counsel for Defendant Centurion of Georgia, LLC

9. **Bird, Brenna – *amicus curiae***

10. Bondurant Mixson & Elmore, LLP – Counsel for Appellees

11. Bradley Arant Boult Cummings, LLP-MS – Counsel for Defendant Centurion of Georgia, LLC

12. **Brown, Derek – *amicus curiae***

13. Calvert, Honorable Victoria Marie – Judge for the United States District Court for the Northern District of Georgia

14. **Canter, Andrew – Counsel for *amici* medical providers**

15. **Caplan Cobb LLC – Counsel for *amicus* Baker**

---

[1] Plaintiffs' complaint uses self-declared names that differ from the names in their official GDC records. Defendants will refer to them by their names in official records.

16. **Carr, Christopher M. – Counsel for Appellants**

17. **Cates, Peter – Counsel for *amici* professors**

18. Center For Constitutional Rights – Counsel for Appellees

19. **Centurion Equity, Inc. – Privately owned corporation of which no publicly held companies own more than 10% of the stock**

20. **Centurion of Georgia, LLC – Defendant and wholly owned subsidiary of Centurion LLC**

21. **Centurion, LLC – Wholly owned subsidiary of MHM Services, Inc.**

22. **Cleary Gottlieb Steen & Hamilton LLP – Counsel for *amicus* Baker**

23. Consovoy McCarthy PLLC – Counsel for Appellants

24. **Cox, Stephen J. – *amicus curiae***

25. **Curran, Adelyn – Counsel for *amici* medical providers**

26. **Davies, Andrew Rhys – Counsel for *amici* professors**

27. Doe, John – Appellee

28. **Dolovich, Sharon – *amicus curiae***

29. **Drummond, Gentner – *amicus curiae***

30. Early, Emily – Counsel for Appellees

31. Ezie, Andrea Chinyere – Counsel for Appellees

32. Felder, D. Korbin – Counsel for Appellees

33. **Ficarrotta, Daniel – Counsel for Defendant Centurion of Georgia, LLC**

34. **Fitch, Lynn – *amicus curiae***

35. **Fox, Gary M. – Counsel for *amici* professors**

36. Frankson, Michael Geoffrey – Counsel for Defendant Centurion of Georgia, LLC

37. **Gillespie, Amanda – *amicus curiae***

38. **Griffin, Tim – *amicus curiae***

39. Grouev, Zachary P. – Counsel for Appellants

40. **Hannaway, Cathreine L. – *amicus curiae***

41. Harris, Jeffrey M. – Counsel for Appellants

42. **Hilgers, Michael T. – *amicus curiae***

43. Huff, Powell & Bailey, LLC – Counsel for Defendant Centurion of Georgia, LLC

44. Horton, Fantasia (Sylvester Horton) – Appellee

45. **Jones, Kyle – *amicus curiae***

46. **Jones, M. L. Io – Counsel for *amici* professors**

47. Kairey, Julius – Counsel for Appellants

48. **Kastorf Law, LLC – Counsel for *amici* professors**

49. **Kastorf, Kurt – Counsel for *amici* professors**

50. **Kautz, Keith G. – *amicus curiae***

51. **Kessler, Thomas – Counsel for *amicus* Baker)**

52. **Knudsen, Austin – *amicus curiae***

53. **Kobach, Kris W. – *amicus curiae***

54. **Labrador, Raul R. – Counsel for *amici* States**

55. **Littman, Aaron – *amicus curiae***

56. Madison, Naeomi (Terrell Montiel Madison) – Appellee

57. Mardis, Dr. Marlah – Appellant

58. **Marshall, Steve – *amicus curiae***

59. **Massey, Jack – Counsel for *amicus* Baker**

60. **McCuskey, John B. – *amicus curiae***

61. **MHM Services, Inc. – Wholly owned subsidiary of Centurion Equity, Inc.**

62. **Mitchell Shapiro Greenamyre & Funt, LLP – Counsel for *amici* medical providers**

63. **Murrill, Liz – *amicus curiae***

64. **Montenegro, Steve – *amicus curiae***

65. Oliver, Tyrone – Appellant

66. **Paxton, Ken – *amicus curiae***

67. **Perdomo, Erica – Counsel for *amici* medical providers**

68. **Peterson, Warren – *amicus curiae***

69. Petrany, Stephen J. – Counsel for Appellants

70. **Quinn Emanuel Urquhart & Sullivan, LLP – Counsel for *amici* medical providers**

71. **Reinert, Alex – *amicus curiae***

72. **Resnik, Judith – *amicus curiae***

73. **Rokita, Theodore E. – Counsel for *amici* States**

74. **Ross, Skyler – Counsel for *amici* professors**

75. **Rovner, Laura – *amicus curiae***

76. **Saltaformaggio, Erin – Counsel for Defendant Centurion of Georgia, LLC**

77.  Sauls, Randy – Appellant

**78.  <u>Schlanger, Margo – *amicus curiae*</u>**

**79.  <u>Schneider, Jason S. – *amicus curiae*</u>**

80.  Seals, Amanda Kay – Counsel for Appellees

81.  Sellers, Matthew – Counsel for Appellees

**82.  <u>Sen, Noopur – Counsel for *amicus* Baker</u>**

**83.  <u>Sheffey, Ariel – Counsel for *amicus* Baker</u>**

**84.  <u>Sherman, Athena – *amicus curiae*</u>**

**85.  <u>State of Alabama – *amicus curiae*</u>**

**86.  <u>State of Alaska – *amicus curiae*</u>**

**87.  <u>State of Arkansas – *amicus curiae*</u>**

**88.  <u>State of Idaho – *amicus curiae*</u>**

**89.  <u>State of Indiana – *amicus curiae*</u>**

**90.  <u>State of Iowa – *amicus curiae*</u>**

**91.  <u>State of Kansas – *amicus curiae*</u>**

**92.  <u>State of Louisiana – *amicus curiae*</u>**

**93.  <u>State of Mississippi – *amicus curiae*</u>**

**94.  <u>State of Missouri – *amicus curiae*</u>**

**95.  <u>State of Montana – *amicus curiae*</u>**

**96.  <u>State of Nebraska – *amicus curiae*</u>**

**97.  <u>State of North Dakota – *amicus curiae*</u>**

**98.  <u>State of Ohio – *amicus curiae*</u>**

99. **State of Oklahoma – *amicus curiae***

100. **State of South Carolina – *amicus curiae***

101. **State of Texas – *amicus curiae***

102. **State of Utah – *amicus curiae***

103. **State of West Virginia – *amicus curiae***

104. **State of Wyoming – *amicus curiae***

105. **Steeves, Jaden – Counsel for *amici* States**

106. **Swerlick, Arin – *amicus curiae***

107. Thompson, John Henry, Counsel for Appellants

108. **Vey, Alexander C. – Counsel for Defendant Centurion of Georgia, LLC**

109. Vinson, Kayla – Counsel for Appellees

110. **Waddell, T. Brandon – Counsel for *amicus* Baker**

111. **Wells, Michael L. – *amicus curiae***

112. **Wilmer Cutler Pickering Hale and Dorr LLP – Counsel for *amici* professors**

113. **Wilson, Alan – *amicus curiae***

114. Wilson, Brynn – Appellee

115. **Wrigley, Drew H. – *amicus curiae***

116. Wyrick, Rachael C.T. – Counsel for Appellants

117. **Yost, Dave – *amicus curiae***

118. **Zarian, Michael A. – Counsel for *amici* States**

119. Zhu, Celine – Counsel for Appellees

120. **Zihiri, Saifeldeen – Counsel for *amicus* Baker**

Appellants (other than Centurion of Georgia, LLC and the entities of which it is a corporate subsidiary listed above) are government officials of the State of Georgia,[2] and Appellees are individuals. No publicly traded company or corporation has an interest in the outcome of this case or appeal. Per Circuit Rule 26.1-2(c), Appellants certify that this CIP is complete.

Dated: April 3, 2026        /s/ *Jeffrey M. Harris*
                                                  Counsel for Appellants

---

[2] Defendant Centurion of Georgia, LLC filed a separate appeal from the district court's permanent injunction order and entry of partial final judgment. *See* Dkt.22. The Court consolidated Centurion's appeal with this one. *See* Dkts.22, 27, 33, 46.

# TABLE OF CONTENTS

Amended Certificate of Interested Persons.................................................................C-1

Table of Contents ..............................................................................................................i

Table of Authorities.........................................................................................................iii

Introduction & Summary of the Argument.......................................................................1

Argument...........................................................................................................................6

    I.    The Eighth Amendment does not prohibit state officials from making
categorical judgments regarding inmate medical treatment. ...........................6

    II.    Georgia's decision in SB185 not to spend taxpayer dollars facilitating
cross-sex hormone interventions in its prison system does not constitute
deliberate indifference......................................................................................9

        A.    *Skrmetti* and *Eknes-Tucker* make clear that regulations on the
administration of cross-sex hormones, up to and including
outright bans, pass constitutional muster under a deferential
standard of review. ................................................................10

        B.    That SB185 departed from GDC's prior policies does not mean
that the change in policy was objectively conscience-shocking,
subjectively reckless, or an unreasonable response to the risk.........13

    III.    The district court erred by ignoring the Cass and Baker Reviews
regarding the weakness of the evidence base underlying cross-sex
hormones. ......................................................................................................16

        A.    The parties stipulated to a closed factual record that included the
Reviews. ...............................................................................16

        B.    The State was not required to filter the scientific research
supporting SB185 through testimony from a retained expert...........18

        C.    At minimum, the district court should have denied summary
judgment (and injunctive relief) in light of factual disputes. .............20

    IV.    Federal courts cannot subvert statutory and constitutional limitations on
their remedial powers by certifying a Rule 23(b)(2) class...............................22

        A.    The PLRA prohibits granting injunctive relief to unnamed
inmates, including to unnamed members of a Rule 23(b)(2) class
action. ...................................................................................22

i

B.       Stewart and Madison lack standing to seek injunctive relief and thus cannot represent the "requesting class." .......................................25

Conclusion .................................................................................................................26

Certificate of Compliance .........................................................................................28

Certificate of Service..................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*ACUITY v. Burd & Smith Const., Inc.*,
721 N.W.2d 33 (N.D. 2006) ..................................................................................24

*Ancata v. Prison Health Servs.*,
769 F.2d 700 (11th Cir. 1985) ...............................................................................7

*Anderson v. Crouch*,
2026 WL 667919 (4th Cir. Mar. 10) ...............................................................3, 11, 13

*Bayse v. Ward*,
147 F.4th 1304 (11th Cir. 2025) ........................................................................1, 9

*Berrocal v. Att'y Gen.*,
136 F.4th 1043 (11th Cir. 2025) ..........................................................................26

*Brown v. Plata*,
563 U.S. 493 (2011) ..............................................................................................25

*Chiles v. Salazar*,
2026 WL 872307 (U.S. Mar. 31) ..........................................................................16

*Diamond v. Owens*,
131 F. Supp. 3d 1346 (M.D. Ga. 2015) .................................................................7

*Donald v. Norris*,
131 F.4th 1255 (11th Cir. 2025) .........................................................................7, 8

*Eknes-Tucker v. Governor of Alabama*,
114 F.4th 1241 (11th Cir. 2024) ....................................................................... 2, 19

*Eknes-Tucker v. Governor of Alabama*,
80 F.4th 1205 (11th Cir. 2023) .........................................2, 3, 4, 10, 11, 13, 18, 19, 22

*Estelle v. Gamble*,
429 U.S. 97 (1976) .................................................................................................4

*Ga. Advoc. Off. v. Jackson*,
4 F.4th 1200 (11th Cir. 2021) .......................................................................22, 24, 25

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ..............................................................................................24

*Gibson v. Collier*,
920 F.3d 212 (5th Cir. 2019) .................................................................................8

*Hoffer v. Sec'y, Fla. Dep't of Corrs.*,
  973 F.3d 1263 (11th Cir. 2020) ...................................................................9, 10, 14, 15

*Jim Gall Auctioneers, Inc. v. City of Coral Gables*,
  210 F.3d 1331 (11th Cir. 2000) .................................................................................12

*Jones v. Bock*,
  549 U.S. 199 (2007) ...................................................................................................24

*Keohane v. Fla. Dep't of Corr. Sec'y*,
  952 F.3d 1257 (11th Cir. 2020) ........................................................................2, 6, 7, 12

*Kothmann v. Rosariso*,
  558 F. App'x 907 (11th Cir. 2014) ...............................................................................7

*L. W. by & through Williams v. Skrmetti*,
  83 F.4th 460 (6th Cir. 2023) ........................................................................................5

*Lange v. Houston Cnty.*,
  152 F.4th 1245 (11th Cir. 2025) .....................................................................3, 11, 13

*Lebron v. Secretary of Florida Department of Children and Families*,
  772 F.3d 1352 (11th Cir. 2014) ..................................................................................19

*Perttu v. Richards*,
  605 U.S. 460 (2025) ...................................................................................................24

*Sconiers v. Lockhart*,
  946 F.3d 1256 (11th Cir. 2020) ....................................................................................5

*Shook v. El Paso County*,
  386 F.3d 963 (10th Cir. 2004) ...................................................................................23

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) ...................................................................................................25

*United States v. Rahimi*,
  602 U.S. 680 (2024) .....................................................................................................4

*United States v. Skrmetti*,
  605 U.S. 495 (2025) ........................................ 2, 3, 4, 5, 8, 10, 11, 13, 14, 17, 18, 19, 21

*Vacco v. Quill*,
  521 U.S. 793 (1997) ...................................................................................................11

*Wade v. McDade*,
  106 F.4th 1251 (11th Cir. 2024) ........................................................................ 1, 7, 9

*Yates v. Collier*,
  868 F.3d 354 (5th Cir. 2017) ......................................................................................23

iv

*Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*,
  471 U.S. 626 (1985)........................................................................................................12

**Constitutions**

U.S. Const., Am. 8, cl.3 ....................................................................................................1

**Statutes**

18 U.S.C. §3626(a)(1)(A) ...................................................................................23, 26, 27

42 U.S.C. §1997e(a).........................................................................................................24

**Other Authorities**

Zhang, et al., *Quality of the World Professional Association for Transgender Health Guideline
  Standards of Care 8: An Appraisal Using the AGREE II Instrument, Archives of Sexual
  Behavior* (Feb. 19, 2026), perma.cc/BRF6-CFUB .................................................. 15, 16

# INTRODUCTION & SUMMARY OF THE ARGUMENT

Plaintiffs ask the Court to fundamentally transform prison administration in this Circuit. The Eighth Amendment deliberate-indifference standard is one of the most deferential in constitutional law. An inmate's medical treatment does not violate this standard unless it is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Bayse v. Ward*, 147 F.4th 1304, 1312 (11th Cir. 2025). Even conscience-shocking treatment is not unconstitutional unless state officials act with "'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (en banc). And even then, an official "cannot be found liable … if he 'responded reasonably to th[e] risk.'" *Id.* Any less demanding test would be unmoored from the constitutional text, which prohibits only the "inflict[ion]" of "cruel and unusual punishments." U.S. Const., Am. 8, cl.3. The decision below departs from these principles in multiple ways, on both substance and procedure.

*First*, the district court interpreted this highly deferential standard to state a sweeping constitutional rule: that a state legislature cannot decline to fund even controversial and unproven interventions unless the State allows for individualized exceptions or can show that the intervention is "never a medically appropriate treatment." R.50 at 40; R.94 at 3-4.[1] As Georgia and twenty-one other states legislatures agree, "[t]hat cannot possibly be the law." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1278 (11th

---

[1] Citations of the district court docket are formatted as R.X at Y or R.X ¶Y. Citations of this Court's or other courts' dockets are formatted as Dkt.X at Y or Dkt.X ¶Y. All citations reference internal pagination and paragraph numbers.

Cir. 2020); Dkt.37 (Multistate Br.) at 9. Neither the Eighth Amendment's text and history nor this Court's precedent suggest that legislation restricting access to certain types of medical interventions constitutes *per se* deliberate indifference.

To hold otherwise would mean that the Eighth Amendment mandates individualized "evaluations" for sex-change surgeries, assisted suicides, or any other experimental and unproven intervention so long as an inmate retains an expert to testify that it is "medically appropriate." R.50 at 40, 58. Combined with the novel requirement that prison officials defend these challenges using expert testimony or not at all, the result would invite every inmate in the correctional system to sue to obtain special treatment. Nothing in the Constitution or this Court's cases requires that absurd result, which "would precipitate sweeping changes in the law of prison administration." *Keohane*, 952 F.3d at 1279.

*Second*, the district court then applied its new rule to permanently enjoin Senate Bill 185's cross-sex-hormone provisions, R.94 at 27-28, but the Court's reasoning reflects another fatal flaw that requires reversal. This Court and the Supreme Court have held that states can regulate the same controversial and unproven hormonal interventions SB185 does, including by *banning them altogether* in certain circumstances. *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), *rehearing denied* 114 F.4th 1241 (11th Cir. 2024) (en banc); *United States v. Skrmetti*, 605 U.S. 495 (2025). The fact that an individual diagnosed with gender dysphoria has been convicted of a crime cannot possibly mean the State must now affirmatively fund and facilitate controversial

interventions that nearly half of states have *banned* in at least some circumstances. Given the "fierce scientific and policy debates about the safety, efficacy, and propriety" of cross-sex-hormones in the "evolving field" of gender-dysphoria treatment, *Skrmetti*, 605 U.S. at 525, the General Assembly's choice not to spend taxpayer dollars facilitating these interventions in the Georgia prison system was entirely reasonable and should have been entitled to judicial deference rather than judicial nullification.

Plaintiffs give short shrift to these landmark decisions, purporting to limit them to other constitutional provisions and laws involving minors. But this Court and others have properly applied the *reasoning* of *Skrmetti* and *Eknes-Tucker* to cases involving adults and fact patterns outside the Equal Protection and Due Process contexts. *E.g.*, *Lange v. Houston Cnty.*, 152 F.4th 1245, 1252 (11th Cir. 2025) (en banc); *Anderson v. Crouch*, 2026 WL 667919, at *9.n.15 (4th Cir. Mar. 10). Indeed, if anything (and as Plaintiffs never dispute), the deliberate-indifference standard is even more deferential to state officials than rational-basis review because the former requires conduct that is objectively conscience-shocking, subjectively reckless, and an objectively unreasonable response to any resulting risk of harm.

Rather than follow binding precedent, Plaintiffs ask the Court to give determinative weight to GDC's pre-SB185 policies, the preferences of deeply ideological advocacy groups like the World Professional Association for Transgender Health, and the (inevitably aligned) views of their retained experts. But the deliberate-indifference

3

standard does not freeze prison policy the first time an official agrees to provide a medical intervention. If it did, the Eighth Amendment would be "a law trapped in amber." *United States v. Rahimi*, 602 U.S. 680, 691 (2024). That sort of one-way ratchet is inconsistent with the Supreme Court's invocation of "'evolving standards'" in Eighth Amendment jurisprudence. *E.g.*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). And it is especially inapt in a case about gender-dysphoria treatment, which the Supreme Court has accurately described as an "evolving field" characterized by "fierce scientific and policy debates about the safety, efficacy, and propriety" of the same types of interventions at issue here. *Skrmetti*, 605 U.S. at 525. All of this forecloses any holding that these interventions are so beyond dispute that it would be conscience-shocking and subjectively reckless not to provide them to inmates at taxpayer expense.

*Third*, after adopting Plaintiffs' misunderstanding of the Eighth Amendment, and unduly downplaying *Skrmetti* and *Eknes-Tucker*, the district court blinded itself to the Baker and Cass Reviews, two high-profile studies supporting the State's position. Plaintiffs cannot justify this one-sided decision by pointing to the parties' pre-briefing stipulation. No reasonable reader would believe that the State Defendants stipulated to a closed record excluding key studies that Defendants cited and quoted in their preliminary injunction briefing, R.25 at 13-14, and that Plaintiffs' counsel urged the court to "examin[e] … for [it]self." R.56 at 65:16-24.

The district court's refusal to consider these studies unless they were distilled and parroted through other experts is no more defensible. Rational-basis review (like the

deliberate-indifference standard), "requires deference to legislatures, not to medical experts or trial court findings." *L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 488 (6th Cir. 2023), *aff'd*, 605 U.S. 495. As Plaintiffs' counsel previously acknowledged, the "publicly accessible" Reviews "speak for themselves," R.56 at 65:16-24, and are the sort of sources that courts—including the Supreme Court—have never been shy about engaging with directly. *See* Multistate.Br.13. Indeed, both the majority and Justice Thomas in *Skrmetti* quoted and discussed the Cass Review, *one of the studies that the district court ignored*, with no suggestion that material like this was off-limits unless recycled through another expert. *See, e.g.*, 605 U.S. at 524-25; *id.* at 539, 544 (Thomas, J., concurring). At minimum, the parties' differing interpretations of the medical evidence created a genuine dispute of material fact that should have foreclosed summary judgment or injunctive relief in favor of Plaintiffs. *E.g.*, *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

*Finally,* the district court compounded its error by extending the permanent injunction to Stewart, Madison, and hundreds of absent class members. Plaintiffs contend that a single inmate (even one not receiving hormones when SB185 took effect) can obtain the equivalent of a universal injunction by representing a class of individuals who wish to be "evaluated" for cross-sex-hormones. All without requiring a shred of individualized evidence that the Eighth Amendment entitles each specific person to such relief or that the injunction will ever result in a "requesting" inmate receiving hormones.

Such sweeping judicial intervention into the management of a state prison system runs afoul of both the PLRA and Article III. To comport with statutory and constitutional limits, the district court should have limited its order to the named Plaintiffs who were "receiving" cross-sex-hormones in GDC custody on SB185's effective date, or at most to those Plaintiffs and the "receiving class."

# ARGUMENT

## I. The Eighth Amendment does not prohibit state officials from making categorical judgments regarding inmate medical treatment.

This Court has made clear that "prisoner[s] bringing a deliberate-indifference claim ha[ve] a steep hill to climb." *Keohane*, 952 F.3d at 1266. Like the district court, Plaintiffs suggest that a state legislature violates the Eighth Amendment whenever it crafts generally applicable rules limiting the availability of certain medical interventions. But this Court has never held that so-called "blanket bans" on a particular treatment is *per se* unconstitutional. Indeed, *Keohane* explained that the Eighth Amendment does *not* "prohibit prison authorities from making a prophylactic judgment that [allowing inmates to obtain 'social transition' items] in a men's prison simply poses too grave a threat to institutional security." 952 F.3d at 1278-79. Under Plaintiffs' view of the law, that prophylactic rule is facially unconstitutional unless it promises an individualized medical assessment for every inmate who retains third-party experts labeling the intervention "medically appropriate." R.50 at 40; R.94 at 3-4. This Court "just d[id]n't think so" in *Keohane*, 952 F.3d at 1279. It should not hold differently here.

6

Plaintiffs attempt to ground their novel Eighth Amendment rule in an assortment of authorities, including: a decade-old district court order that deferred to WPATH's "standards of care," *Diamond v. Owens*, 131 F. Supp. 3d 1346 (M.D. Ga. 2015); an unpublished case, *Kothmann v. Rosariso*, 558 F. App'x 907 (11th Cir. 2014); a paragraph of dicta from *Keohane* discussing a claim the Court expressly acknowledged was moot, 952 F.3d at 1266-67; snippets from *Ancata v. Prison Health Services*, 769 F.2d 700, 704 (11th Cir. 1985); and a smattering of out-of-circuit decisions, *see* Red.Br.36-37.

Starting with *Ancata*, Plaintiffs' own *amici* concede that this was not even an Eighth Amendment case. *See* Dkt.66 at 9 n.2; *Ancata*, 769 F.2d at 703 n.5. In all events, even if *Ancata* had any relevance to the Eighth Amendment, it did not hold what Plaintiffs say. This Court recently characterized the conduct at issue there as: "prison employees (1) fail[ing] to provide care they subjectively believed was necessary, (2) intentionally fail[ing] to provide care because the inmate couldn't pay for it, and (3) provid[ing] cursory medical treatment for a serious medical condition." *Donald v. Norris*, 131 F.4th 1255, 1267 (11th Cir. 2025). Read in its entirety, nothing in *Ancata* stands for the proposition that categorical restrictions on certain interventions are *per se* unconstitutional or that inmates suffer a freestanding Eighth Amendment injury whenever they are denied an individualized "evaluation" for a demanded intervention.

*Ancata* also predates this Court's confirmation that a prison official "cannot be found liable … if he 'responded reasonably to th[e] risk.'" *Wade*, 106 F.4th at 1253. The *Donald* court distinguished *Ancata* on the ground that it did not "contemplate" this new

7

defense. 131 F.4th at 1267. Here, SB185 is an eminently reasonable response to the poor evidentiary base for cross-sex hormones and the "ongoing debate among medical experts regarding the risks and benefits" of such interventions, *Skrmetti*, 605 U.S. at 523.

This Court should adopt the better rule: That the Eighth Amendment does not "forbi[d] categorical judgments about the necessity and efficacy of certain medical treatments." *Gibson v. Collier*, 920 F.3d 212, 225 (5th Cir. 2019). To be clear, the State Defendants' position is not that *every* categorical rule would necessarily survive Eighth Amendment scrutiny. Plaintiffs' fearmongering hypothetical about an insulin ban for diabetics, for example, would likely have little support in the medical literature and—given the longstanding and largely uncontroversial nature of such treatment—would be difficult to defend as a reasonable response to the risk. But Georgia's response to an evolving conversation about interventions even the Supreme Court has described as controversial and subject to ongoing debate is a far cry from banning insulin for diabetics.

To sum up, Plaintiffs' position "defies common sense." *Gibson*, 920 F.3d at 216. If the district court's order were upheld on these grounds, every prison policy making a categorical judgment about inmate treatment—including bans on sex-change surgeries, experimental and unproven treatments, or assisted suicide—would be subject to challenge.[2] Because "nothing in the text or history of the [Eighth] Amendment or any

---

[2] These concerns are not hypothetical. There is active litigation in the Northern District of Georgia where an inmate in GDC custody is claiming that the Eighth Amendment requires taxpayer-

of its surrounding precedents suggest" that is the law, Multistate.Br.9, the Court should reject Plaintiffs' invitation to so hold.

## II. Georgia's decision in SB185 not to spend taxpayer dollars facilitating cross-sex-hormone interventions in its prison system does not constitute deliberate indifference.

Absent the district court's erroneous conclusion that SB185's cross-sex-hormone provisions are *per se* unconstitutional as a "categorical" restriction on certain interventions, Plaintiffs are left to show that they have satisfied this Court's stringent deliberate-indifference standard. Again, that requires: (1) the treatment to have been "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness,'" *Bayse*, 147 F.4th at 1312; (2) state officials to have acted with "'subjective recklessness as used in the criminal law,'" meaning that they "actually knew that [their] conduct—[their] own acts or omissions—put the plaintiff at substantial risk of serious harm"; and (3) the same officials not to have "'responded reasonably to th[e] risk,'" *Wade*, 106 F.4th at 1253.

When applying this test, judges may not ask what care the State might render "in the best of all possible worlds," what care the judges themselves would prescribe "if [they] were doctors," or even what care a court "might conclude that ordinary prudence requires." *Hoffer v. Sec'y, Fla. Dep't of Corrs.*, 973 F.3d 1263, 1271-72 (11th Cir. 2020). Put bluntly, care need not be "'perfect, the best obtainable, or even very good'" to clear the

---

funded sex-change surgery, *i.e.*, removal of a biological male's testicles. *See Doe v. GDC*, No. 23-cv-5578 (N.D. Ga.).

constitutional floor. *Id.* at 1271. As one might expect given that strict language, a "'simple difference in medical opinion … as to [an inmate's] diagnosis or course of treatment [fails to] support a claim.'" *Id.* at 1273. Plaintiffs' claims fail because they (at most) described exactly that.

**A. *Skrmetti* and *Eknes-Tucker* make clear that regulations on the administration of cross-sex-hormones, up to and including outright bans, pass constitutional muster under a deferential standard of review.**

*Skrmetti* and *Eknes-Tucker* "emphasize the importance of deference to state legislatures when they exercise traditional policymaking authority in this complex, ever-evolving, and controversial area." Blue.Br.19. That is why this Court and the Supreme Court have upheld even outright bans on cross-sex-hormones despite "arguments … that courts should defer to [the] so-called expert consensus" of groups like WPATH that claim sex-change interventions are medically necessary for their recipients. *Skrmetti*, 605 U.S. at 530 (Thomas, J., concurring). Given that the deliberate-indifference standard is if anything *more deferential to state officials* than rational-basis review, *Skrmetti* and *Eknes-Tucker* should be conclusive as to SB185's constitutionality. *See* Blue.Br.21-30.

Plaintiffs build this syllogism into a strawman by claiming that Defendants are "read[ing] *Skrmetti* and *Eknes-Tucker* to hold that *all* laws regulating gender dysphoria care are a permissible exercise of the state's regulatory authority." Red.Br.50. To the contrary, Defendants are defending only the specific provisions of SB185 that are currently before this Court. And those restrictions are *precisely* the kind of "medical use"

10

classification that the Supreme Court has long held is "subject to only rational basis review." *Skrmetti*, 605 U.S. at 511. Giving the State an equal-or-greater level of deference to that displayed in *Skrmetti* and *Eknes-Tucker* does not change the ultimate result: SB185 clearly passes constitutional muster.

Plaintiffs insist that *Skrmetti* and *Eknes-Tucker* are distinguishable because they involved minors. Red.Br.50-51. But the fact that those laws *also* contained age classifications was not determinative. *Cf. Vacco v. Quill*, 521 U.S. 793, 799-808 (1997) (rational-basis review for a ban on assisted suicide that applied to adults). "Simply put, *Skrmetti* and *Eknes-Tucker* would have applied an equally deferential standard of review had Tennessee and Alabama banned [cross-sex-hormones] for adults, too." Blue.Br.20. Confirming the point, recent decisions from this Court and elsewhere have extended aspects of *Skrmetti*'s reasoning to cases involving adults and explained that many of the interventions *Skrmetti* discussed in the context of minors are also controversial and contested as to adults. *See Lange*, 152 F.4th at 1252; *Anderson*, 2026 WL 667919, at *9.n.15.

Plaintiffs argue that the dozens of state laws regulating cross-sex-hormones that have been upheld under *Skrmetti* and *Eknes-Tucker*, *see* Blue.Br.5.nn.2-3, are irrelevant because "*none* of [those laws] impose a wholesale ban on hormone therapy for adults *outside* prison," Red.Br.51. But the fact that Georgia did not enact a *broader* law should hardly be held against the State in the Eighth Amendment analysis. SB185's more limited restriction is not unconstitutional just because the General Assembly focused on whether taxpayer dollars, and the State's accompanying imprimatur, should be used to

11

facilitate these controversial and unproven interventions in prisons, rather than banning the interventions outright.

A state legislature is "entitled to attack problems piecemeal, save where [a law] implicate[s] rights so fundamental that strict scrutiny must be applied." *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 651 n.14 (1985); *see also Jim Gall Auctioneers, Inc. v. City of Coral Gables*, 210 F.3d 1331, 1333 (11th Cir. 2000) (similar). SB185, of course, is not subject to any form of heightened scrutiny. Thus, the statute cannot be unconstitutional merely because the General Assembly did not exercise the full extent of its power to regulate cross-sex-hormones. Indeed, the Eighth Amendment permits "prophylactic judgment[s]" explicitly based on "threat[s] to institutional security" that are unique to the prison context. *Keohane*, 952 F.3d at 1278-79. Plaintiffs' theory would strike such policies down as unconstitutionally targeted at prisoners, exactly the opposite of what *Keohane* said.

Plaintiffs' contention that SB185 is both unconstitutionally broad because it is a categorical judgment regarding inmate treatment *and* unconstitutionally narrow because it does not apply outside the prison context is striking. Plaintiffs surely would still have brought this suit even if the General Assembly had passed a narrower law (*e.g.*, restricting but still allowing cross-sex-hormones for inmates) or a broader law (*e.g.*, prohibiting the use of public funds for cross-sex-hormones in all circumstances). Of course, Plaintiffs' real theory is that *any regulation* of cross-sex-hormones is unconstitutional unless it

12

parrots WPATH's preferred treatment guidelines. But *Skrmetti* and *Eknes-Tucker* rejected that argument, so Plaintiffs instead try to use the Eighth Amendment to invent a greater constitutional right to cross-sex-hormones for inmates than that possessed by the public at large.

At bottom, Plaintiffs cannot escape the reasoning of *Skrmetti* and *Eknes-Tucker*. These binding precedents (and progeny like *Lange* and *Anderson*) establish two unequivocal propositions: (1) States have broad discretion to regulate cross-sex-hormones, up to and including refusing to fund them and even banning them under certain circumstances; and (2) Courts should "decline … to second-guess the lines that [state legislatures] dra[w]" when responding to developments in the "evolving field" of gender-dysphoria treatment. *Skrmetti*, 605 U.S. at 524-25. This Court's deliberate-indifference standard gives Georgia at least as much policymaking space in the prison context as Tennessee and Alabama received in *Skrmetti* and *Eknes-Tucker*. A reviewing court should not second-guess the lines that SB185 draws any more than those courts did—that is, not at all.

### B. That SB185 departed from GDC's prior policies does not mean that the change in policy was objectively conscience-shocking, subjectively reckless, or an unreasonable response to the risk.

Plaintiffs assert that GDC's practice under its prior policies is evidence that its implementation of SB185 constitutes deliberate indifference. *See* Red.Br.29-42. But to the extent Plaintiffs hope to establish one or more of the elements of this Court's three-

part test based on the mere fact that SB185 resulted in a change in policy, Plaintiffs misunderstand the law.

The Eighth Amendment is not a one-way ratchet insisting that once a certain medical intervention is offered to inmates, it has irrevocably become a constitutional right. Instead, the "sole question" is whether an inmate's care "is so reckless—so conscience-shocking—that it violates the Constitution." *Hoffer*, 973 F.3d at 1272. Accordingly, new developments may warrant changes in prison policy that result in different availability of certain interventions without amounting to an Eighth Amendment violation. That is what happened here.

Amidst "fierce scientific and policy debates about the safety, efficacy, and propriety of medical treatments in an evolving field," *Skrmetti*, 605 U.S. at 525, the General Assembly "respond[ed] directly to th[e] uncertainty," *id.* at 523, by electing not to expend public funds to facilitate controversial and unproven interventions in the Georgia prison system. GDC then responded to the General Assembly's policy choice by revising its policies in accordance with state law and crafting a comprehensive and responsible plan to taper existing recipients off hormones. *See* R.28-1; R.25-2. Drs. Wynne and Owen, the highest-ranking medical officials in the Georgia prison system, ensured that inmates undergoing tapering were able to access all necessary medical and mental-health care and continue to receive treatment for gender dysphoria and any related complications. R.25-2 ¶¶7-16; R.28-1 ¶¶3-11; R.46-1 ¶¶3-5.

To be sure, implementing SB185 meant that Plaintiffs no longer received the precise interventions that they demanded. But under this Court's precedent, when an inmate's "complaint isn't that [officials are] providing no care, just that [they aren't] providing the more aggressive—[or] better—care that [the inmate] desire[s]," there is no claim for deliberate indifference. *Hoffer*, 973 F.3d at 1272.

If there were any doubt that SB185 is perfectly constitutional, the still-ongoing debates surrounding gender-dysphoria treatment should resolve it. *See* Y. Zhang, et al., *Quality of the World Professional Association for Transgender Health Guideline Standards of Care 8,* Archives of Sexual Behavior (Feb. 19, 2026), perma.cc/BRF6-CFUB. The Zhang Review, a peer-reviewed article published after the State Defendants filed their opening brief, "identified significant shortcomings in WPATH's [standards of care]: lack of rigor of development, probably compromised editorial independence, and limited applicability." *Id.* at 6. These limitations "led to concerns that the recommendations formulated may have diverged from those that could be justified considering the evidence basis and its certainty." *Id.* Thus, the Review concluded that "[h]ealthcare providers, associations, and policymakers should be cautious in uncritically adopting or endorsing SOC8." *Id.* at 10.

These continued scientific critiques of the WPATH guidelines that permeate Plaintiffs' complaint, expert reports, and briefing underscore that the General Assembly acted reasonably in enacting SB185 and that GDC acted reasonably in implementing it.

And the significant number of states that have enacted increasingly restrictive regulations on cross-sex-hormones in defiance of WPATH, Blue.Br.5.nn.2-3; *see also* Multistate.Br., confirms that the General Assembly is among good company in disregarding WPATH's guidelines, which Plaintiffs insist set the constitutional standard. After all, "[m]edical consensus[] … is not static; it evolves and always has." *Chiles v. Salazar*, 2026 WL 872307, at *13 (U.S. Mar. 31).

III.   **The district court erred by ignoring the Baker and Cass Reviews regarding the weakness of the evidence base underlying cross-sex-hormones.**

A. **The parties stipulated to a closed factual record that included the Reviews.**

Plaintiffs assert that the Baker and Cass Reviews were not included in the parties' stipulation "that the record is complete" and that the parties would "stipulate to the admissibility of all evidence submitted to date." R.69 ¶3. The purpose of the "closed record" agreement was to facilitate a prompt resolution of summary judgment motions before the preliminary injunction expired after 90 days by operation of the PLRA. *See* R.69. The State Defendants were thus shocked that, after helping ensure a prompt resolution of the case, Plaintiffs turned around and argued (and the district court agreed) that key materials cited by Defendants were somehow not included in the relevant record. It blinks reality that Defendants would have agreed to a "record" that did not include these materials, especially considering they would have unquestionably had the right to present them during any bench trial that would otherwise have been required.

The State Defendants quoted the Reviews in their preliminary injunction brief. See R.25 at 13-14. The parties then discussed them at the preliminary injunction hearing, with no suggestion from Plaintiffs that they were not properly before the Court. R.56 at 28:18-30:1, 59:14-60:19, 64:14-65:24. Indeed, Plaintiffs' counsel specifically "commend[ed]" the court to "look at these, this medical literature, for [it]self." *Id.* at 65:16-24. Unsurprisingly, the district court cited them in its preliminary injunction order. R.50 at 12 n.2, 40 & n.6. No reasonable reader would understand the stipulation to exclude from the record two key sources that were cited and discussed at every stage of the preliminary injunction proceedings, including in the stay briefing before this Court.

Plaintiffs try to defend this untenable change in position by arguing that this Court's rules only include documents "filed in the district court" as part of the record. Red.Br.44. But that does nothing to address the fact that many of the documents "filed" before (*and by*) the district court during the preliminary injunction proceedings cited, quoted, and discussed the Reviews. *E.g.*, R.50. The State Defendants reproduced the Reviews in their summary judgment filings as a matter of administrative convenience, not because those documents were somehow new to the case.

Finally, Plaintiffs' claims of prejudice ring hollow. Again, the State Defendants agreed to the stipulation of a closed record to *help resolve the case in a timely manner* despite the impending expiration of the preliminary injunction. Apparently no professional courtesy goes unpunished. Had Plaintiffs (or the district court) given any contemporaneous indication of the interpretation they now advance, the State Defendants would

17

have rejected a stipulation and demanded a bench trial, likely causing the preliminary injunction to expire long before final judgment. Plaintiffs' effort to use a stipulation negotiated for their clients' benefit as proof that the State Defendants did not at least create a dispute of fact as to SB185's constitutionality is wrong as a matter of law, and it is inconceivable that this accurately reflects Defendants' agreement.

### B. The State was not required to filter the scientific research supporting SB185 through testimony from a retained expert.

As an alternative basis for excluding the Baker and Cass Reviews, Plaintiffs argue that the State was required to proffer the Reviews using an expert witness to spoon-feed them to the Court. Red.Br.44-47. But Plaintiffs ignore that courts and jurists routinely engage with primary source material relevant to a state's argument that a challenged law survives constitutional scrutiny (or a plaintiff's argument that such a law fails constitutional scrutiny).

*Skrmetti* and *Eknes-Tucker* offer on-point examples with respect to *one of the same studies the State Defendants cited*. The *Skrmetti* majority cited the Cass Review "to demonstrate the open questions regarding basic factual issues before medical authorities and other regulatory bodies." 605 U.S. at 524-25. That is same proposition for which the State Defendants cited Justice Thomas's discussion of the Review in their preliminary injunction brief. *See* R.25 at 13 ("'[W]e have no good evidence on the long-term outcomes of interventions to manage gender-related distress.'").

Similarly, in *Eknes-Tucker* en banc proceedings, Judge Lagoa not only engaged with Alabama's studies and faulted the district court for failing to do so, she extensively discussed the Cass Review even though it was published *after the panel opinion*. 114 F.4th at 1266-67 (Lagoa, J., concurring). It is difficult to see how the district court could have erred by focusing on expert witnesses while "never mention[ing] any of" the "six journal articles and public health reports [submitted by the State]" if the only thing that mattered was how the experts characterized those materials. *Id.*

Plaintiffs rely on this Court's decision in *Lebron v. Secretary of Florida Department of Children and Families*, 772 F.3d 1352, 1370 (11th Cir. 2014). But *Lebron* is easily distinguishable. For one, it involved a Fourth Amendment challenge that required a higher degree of judicial scrutiny than either rational-basis review or this Court's deliberate-indifference standard. *Id.* at 1357-58. For another, the *Lebron* court explained that the "applicability to the case at hand [of the studies at issue was] by no means self-evident." *Id.* at 1370. The opposite is true here. It is obvious, for example, that the Cass Review's conclusion that "we have no good evidence on the long-term outcomes of interventions to manage gender-related distress," *e.g.*, R.25 at 13, is relevant to whether a state legislature's decision not to fund those interventions for inmates is so conscience-shocking that it violates the Constitution. *Cf. Skrmetti*, 605 U.S. at 524-25 (citing the Cass Review to "demonstrate the open questions regarding basic factual issues before medical authorities and other regulatory bodies").

**C. At minimum, the district court should have denied summary judgment (and injunctive relief) in light of factual disputes.**

Faced with the prospect that this Court will consider the Baker and Cass Reviews, Plaintiffs and *amici* propose new interpretations of them on appeal. *See* Red.Br.47-50; Dkts.71, 73. But those arguments are irrelevant given the extremely deferential standard of review. At most, the disputed interpretation of these sources reflects the ongoing medical debate and underscores that, at minimum, the district court should have denied summary judgment in light of disputed factual issues.

Plaintiffs insist that the Reviews do not create a genuine dispute of fact because "[n]either publication suggests that hormone therapy is never medically necessary for adults with gender dysphoria, or even that its risks outweigh its benefits." Red.Br.47. These complaints are based on Plaintiffs' erroneous view that the Eighth Amendment prohibits categorical judgments unless an intervention is never "medically appropriate." R.50 at 40.

Regardless, the studies *do* speak for themselves. The Baker Review could not "draw any conclusions … about whether hormone therapy affects death by suicide among transgender people," R.72-2 at 12, and concluded that the "strength of evidence" for purported benefits to quality of life, depression, and anxiety "is low," *id.* at 8. The Cass Review found that WPATH ignored or downplayed evidence that questioned the efficacy of "gender-affirming medical treatment," and continued to rely on flawed "studies that were already deemed as low quality." R.72-3 at 131. And it is hard

to be clearer than the Cass Review's summation that "we have no good evidence on the long-term outcomes of interventions to manage gender-related distress." *Id.* at 13. Despite Plaintiffs' attempts to muddy the waters, the Reviews clearly support, at minimum, the exact proposition for which the State Defendants (and the Supreme Court) cited them: "to demonstrate the open questions regarding basic factual issues before medical authorities and other regulatory bodies" and "underscore the need for legislative flexibility in this area." *Skrmetti*, 605 U.S. at 524-25.

The Baker *amicus* takes a different tack, agreeing that the literal statements the State Defendants quote are accurate but contending as a matter of policy that those statements do not provide adequate support for regulations like SB185. Dkt.71-2. But when a state legislature takes a different view on a contested policy question, Dr. Baker has no more say regarding that choice than any other member of a society governed by democratically elected representatives, not by "the expert class." *Skrmetti*, 605 U.S. at 530 (Thomas, J., concurring).

Some states may agree that cross-sex-hormones should be made available to inmates at taxpayer expense even though they are based on (at most) low-quality medical evidence. Others may disagree, and choose to regulate such interventions or limit the use of public funds to facilitate them. The resulting scientific and policy debate has been "fierce," with voices on both sides "rais[ing] sincere concerns." *Skrmetti*, 605 U.S. at 525. But the Constitution "does not resolve these disagreements" or "afford [federal courts or medical experts] license to decide them as [they] see best." *Id.*

The fact that the medical and policy issues at the heart of this case are controversial and disputed should have been sufficient to grant *Defendants* summary judgment under *Skrmetti*, *Eknes-Tucker*, and the highly deferential Eighth Amendment standard. At minimum, however, any disputes about the best readings of studies whose factual accuracy is unquestioned should have been resolved by the district court during a bench trial. Thus, if the Court concludes that such disputes exist and are material even under the deferential deliberate-indifference standard, it should reverse the grant of summary judgment and remand for further proceedings.

## IV. Federal courts cannot subvert statutory and constitutional limitations on their remedial powers by certifying a Rule 23(b)(2) class.

### A. The PLRA prohibits granting injunctive relief to unnamed inmates, including to unnamed members of a Rule 23(b)(2) class action.

The PLRA is clear: Injunctive relief in prison-conditions cases "shall extend no further than necessary to correct the violation of the Federal right of a *particular plaintiff or plaintiffs*." 18 U.S.C. §3626(a)(1)(A) (emphasis added). So is its purpose: "to expedite prison litigation and end judicial overreach into the management of prisons." *Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1205-06 (11th Cir. 2021), *vacated as moot*, 33 F.4th 1325 (11th Cir. 2022). "Put simply, 'Congress meant to get the federal courts out of the business of running jails.'" *Id.* Granting injunctive relief to hundreds of absent class members under Rule 23(b)(2) is fundamentally inconsistent with the PLRA's plain text and manifest purpose.

Plaintiffs try to minimize the disruption inherent in a floating injunctive class made up of hundreds of unnamed members. But the stay briefing makes clear that Plaintiffs will threaten contempt if unsatisfied with the results of the Requesting Class's evaluations. *See Benjamin v. Oliver*, No. 25-13060 (11th Cir.) (*Benjamin I*), Dkt.17-1 at 7.n.6. And the district court ordered Defendants to "resume providing [Receiving Class] members hormone therapy *according to the applicable standard of care*," as presumably defined by the Plaintiffs and their retained experts. R.94 at 28 (emphasis added). The practical result is that any treatment decision not blindly affirming a class member's preferred hormone regimen will be challenged as noncompliance, consuming limited state resources and short-circuiting the exhaustion procedure that would ordinarily govern. *See* 42 U.S.C. §1997e(a).

Plaintiffs cite *Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017), and *Shook v. El Paso County*, 386 F.3d 963 (10th Cir. 2004), for the proposition that the PLRA allows a federal court to appoint itself statewide medical director of the Georgia prison system. Red.Br.55. But even *Yates* recognized the "straightforward" rationale for Defendants' interpretation—it simply placed greater weight on the negative inference that the PLRA does not directly mention class actions and a policy concern that the defendants' reading "would pose a substantial barrier to class certification in a significant number of prison condition challenges." 868 F.3d at 369-70. *Shook* is similar. *See* 386 F.3d at 969-71. Neither point is persuasive.

To start, *Yates* and *Shook* were decided before the Supreme Court's decision in *Garland v. Aleman Gonzalez*, which rejected an "infer[ence] that no preclusion of class-wide relief was intended" in §1252(f)(1) of the INA because that limitation on injunctive relief, like the PLRA's, "lack[ed] any express reference to class actions." 596 U.S. 543, 555 (2022). Plaintiffs argue that the PLRA and §1252(f)(1) use different words. Red.Br.56. But the "ordinary meaning of 'particular' is 'of, relating to, or being a single person or thing,' and 'one unit or element among others.'" *ACUITY v. Burd & Smith Const., Inc.*, 721 N.W.2d 33, 41-42 (N.D. 2006) (quoting Merriam–Websters Coll. Dictionary 903 (11th ed. 2005)). That is so close to "individual," the word at issue in *Aleman Gonzalez*, that the Supreme Court used the terms interchangeably. *See* 596 U.S. at 550.

Plaintiffs argue that the PLRA is different. Red.Br.57 (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Perttu v. Richards*, 605 U.S. 460, 469-70 (2025)). But unlike the issue in *Jones*—whether exhaustion was an affirmative defense or pleading requirement—the PLRA's limitation on injunctive relief is front-and-center in §3626(a)(1)(A). *Perttu*, a constitutional avoidance case decided in the shadow of the Seventh Amendment, 605 U.S. at 468, 479, is also inapt because there is no constitutional right to a Rule 23(b)(2) class action.

As to Plaintiffs' concern that the PLRA's commonsense meaning might disrupt prison-conditions litigation, that would have been a feature, not a bug, to the Congress that enacted the statute to "'get the federal courts out of the business of running jails.'" *Ga. Advoc. Off.*, 4 F.4th at 1205-06. It is hard to imagine a clearer example of a federal

court getting *into* "the business of running jails," *id.*, than micromanaging the medical treatment of hundreds of unnamed inmates under threat of contempt proceedings for every imagined violation.

Finally, Plaintiffs invoke the Supreme Court's decision in *Brown v. Plata*, 563 U.S. 493 (2011). But they concede that "*Brown* did not address whether the PLRA prohibits class actions." Red.Br.55. This Court should not overread *Brown*. The very same year, the Supreme Court reiterated that, although "an unnamed member of a *certified* class may be 'considered a party for the particular purpose of appealing' an adverse judgment," "unnamed members of a class action … are not parties to the suit." *Smith v. Bayer Corp.*, 564 U.S. 299, 313-14 (2011) (cleaned up). Even if they were, the PLRA limits courts to granting relief narrowly tailored to remediate violations of the rights of "particular" plaintiffs, a restriction designed to keep federal courts from moonlighting as prison wardens or statewide medical directors. Nothing about the hundreds of unnamed inmates covered by the district court's sweeping classes is "particular[ized]" enough for the associated injunctions to pass PLRA muster.

### B. Stewart and Madison lack standing to seek injunctive relief and thus cannot represent the "requesting class."

As the district court acknowledged, Stewart and Madison are the only Plaintiffs even arguably eligible to represent inmates not receiving cross-sex-hormones on SB185's effective date. *See* R.50 at 48-50. But neither has standing to seek injunctive relief because enjoining SB185 would, at most, render it "'merely speculative'" that they

will ever receive cross-sex-hormones. *Berrocal v. Att'y Gen.*, 136 F.4th 1043, 1051-52 (11th Cir. 2025).

Plaintiffs' standing theory relies on a freestanding "failure to evaluate" injury, which they argue can be proved without individualized evidence that the Eighth Amendment requires providing cross-sex-hormones. Red.Br.58. That injury turns on Plaintiffs' argument that categorical judgments regarding inmate treatment are *per se* unconstitutional. Plaintiffs are wrong about the Eighth Amendment's (lack of any) individual evaluation requirement, *see* Part I, *supra*, so they are also wrong that Stewart and Madison can show a cognizable Eighth Amendment injury without providing individualized evidence. Absent such evidence, no reasonable factfinder could determine that Stewart and Madison are entitled to cross-sex-hormones, much less hundreds of absent "requesting class" members.

Because Stewart and Madison lack standing and are the only valid representatives for the "requesting class," the Court must at minimum vacate the class and dismiss Stewart and Madison's hormone claims.

## CONCLUSION

For these reasons, the Court should reverse the decision below, vacate the partial final judgment, class certification and permanent injunctions, and remand with instructions to enter partial final judgment for Defendants. If the Court concludes that there are material disputes of fact, it should reverse and remand to resolve those issues under the appropriate legal standard.

Dated: April 3, 2026

Christopher M. Carr
 *Attorney General*
John Henry Thompson
 *Solicitor General*
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia, 30334
404-458-3408
jhthompson@law.ga.gov

Respectfully submitted,

*/s/ Jeffrey M. Harris*
Jeffrey M. Harris
Rachael C.T. Wyrick
Julius Kairey
Zachary P. Grouev*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com

*Supervised by principals of the firm admitted to practice in Virginia*

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This reply complies with Rules 28 and 32(a)(7) because it contains 6,494 words, excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 12-point, 14-point and 16-point Garamond font.

Dated: April 3, 2026 */s/ Jeffrey M. Harris*

# CERTIFICATE OF SERVICE

I filed this brief with the Court via CM/ECF, which will send a notice of docketing activities to all parties who are registered through CM/ECF.

Dated: April 3, 2026 _/s/ Jeffrey M. Harris_